**FILED - LN**
September 21, 2012 4:30 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY _dfw_/_____ SCANNED BY /____

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

ROBERT GARDNER,                                    Case No.
                    Plaintiff,

v

Michigan State University Board of Trustees
and Lou Anna Simon, Jointly
                    Defendant,                     **1:12-cv-1018**

Michael Kiley, Attorney for Defendant
Office of the President
Michigan State University
401 Administration Bldg
East Lansing, MI 48824

---

### COMPLAINT AND JURY DEMAND

---

NOW COMES Plaintiff Robert Gardner, Pro Per, for his complaint against defendants, avers that MSU President, Lou Anna Simon, through her General Counsel, immediate administration, and their relationship with Local, State and Federal Agencies, has directly and by example, created a hostile atmosphere against plaintiff, and even his family, that has prevented his continued education and gainful employment, especially as it relates to his efforts to work with Michigan's Native American population.

Plaintiff avers this is in retaliation to Civil Rights complaints he filed against Defendant, retaliation to having been forced to implement his affirmative action program she opposed and does not want expanded, and her later knowledge that her actions were leading to this action that could endanger her own career. Plaintiff avers that her actions and leadership have augmented a discrimination that pre-exists with MSU's agriculture employer focus and directed it against him, given the position of the Defendant and the nature of Plaintiff's work with migrant farm workers and the minority agriculture population that the MSU administration is on record for opposing.

## PARTIES IN JURISDICTION

1.    Plaintiff and Defendant Simon are residents of this judicial district.

2.    Michigan State University is an educational institution existing under the Constitution and Laws of the State of Michigan and existing within this judicial district.

3.    This is a civil action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., for retaliation based discrimination

4.    This case also involves a civil claim brought pursuant to 42 U.S.C. §1983 seeking declaratory and injunctive relief against defendants for depriving plaintiff of his protected property interest, especially without due process of law, as required under the 14th Amendment to the U.S. Constitution as well as claims under 42 U.S.C. §1985, alleging a conspiracy to commit the same deprivation of rights.

6.    This case also involves a civil claim pursuant to Title VI of the Civil Rights Act of 1964 seeking declaratory and injunctive relief as well as money damages against defendants for discrimination in programs that receive Federal financial assistance and for harassment.

7. This case also involves claims brought under Michigan's Elliott-Larsen Civil Rights Act for discrimination.

8. This case also involves claims brought under the Freedom of Information Act.

9.    The United States District Court for the Western District of Michigan has original jurisdiction pursuant to 28 U.S.C. §1331 and supplemental jurisdiction pursuant to 28 U.S.C. §1367. Jurisdiction for the declaratory relief is also premised upon 28 U.S.C. §§2201 and 2201.

10.    Venue lies in the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. §1391b.

2

11.    All conditions precedent to jurisdiction of §706 of Title VII, 42 U.S.C. §2000b

have occurred and been complied with:

        A.      Charges of employment discrimination on the basis of retaliation were
                    filed with the Equal Employment Opportunity Commission (EEOC).

        B.      A notice of right to sue, dated June 28, 2012, was received from the EEOC
                    regarding plaintiff's claim.

        C.      This complaint has been filed within ninety (90) days of the receipt of the
                    notice of right to sue.

3

FACTS

I.  On April 26, 2011, Plaintiff applied for and obtained a contingent employment arrangement at Michigan State University (MSU) under the direction of Gordon Henry, Director of the Michigan State University Native American Institute (NAI) (such as between Plaintiff attorneys and Plaintiffs in Civil Rights matters).

   A. Plaintiff worked under the direction of Dr. Henry and the auspices MSU's NAI, providing his resources and time to establish an Outreach program for Dr. Henry. In turn, Dr. Henry agreed to pay / hire Plaintiff when funding became available which they would pursue together. When funding became available in August, 2011, Defendant upended this agreement / relationship because of past Civil Rights complaints filed by plaintiff.

   B. As part of this effort, Plaintiff also worked with his Ph.D. supervising professor of record, Dr. James Oehmke, along with Dr. Gordon to develop a related Ph.D. research program that would address the administrative hurdles placed by Defendant Simon in finishing his Ph.D.

   C. Drs. Henry Gordon and James Oehmke are agents of MSU with the authority to hire and supervise Ph.D. programs.

   D. August, 2011, Plaintiff immediately filed a Michigan Department of Civil Rights complaint and filed a law suit in Federal Court against Defendant Simon on other issues.

   E. The Federal Judge ruled that Plaintiff's PhD issues and employment with the Native American Institute were not part of the Federal suit and therefore are being brought forward in this instant action.

4

II.    **Defendant conspired with several Federal and State agencies to upend an employment contract Plaintiff had with the Bureau of Indian Affairs and the Michigan based Pokagon Native American tribe. This prevented Plaintiff's continued employment and worked to deny access by Pokagon Tribe members to their tribal lands for farming.**

1)  In Summer, 2011, Plaintiff obtained promises of support and funding from the Bureau of Indian Affairs contingent he was able to get support for his program from a Michigan Native American tribe. Plaintiff organized and formalized an agreement between him, the Bureau of Indian Affairs (BIA), the Michigan based Pokagon tribe and his supervising MSU professor, James Oehmke. (Defendant's attorneys had instructed Dr. Henry to not accept the money). The agreed upon goal was to assess the feasibility of a plan to develop Pokagon tribal members' agriculture skills and allow them to farm tribal lands to generate revenues and provide nutritional sustenance to tribal members. It would also allow Plaintiff and MSU research professors to finish a PhD. thesis.  Funding was to be given to the Pokagons who would pay Dr. Oehmke and Plaintiff.

2)  In October, 2012, a Tribal administrator attempted to get Plaintiff to sign a document identifying Plaintiff as a MSU Professor. The Pokagon had no basis to make this error given their project outline plainly identified Plaintiff as wishing to finish his Ph.D. under James Oehmke.  However, it catered to accusations made by the University attorney, Mike Kiley, who earlier tried to discredit Plaintiff by falsely stating in the Federal Civil Rights case that Plaintiff earlier had tried to pose as a MSU professor.

5

3) In October, 2012, Pokagon officials informed plaintiff they no longer wished to allow Pokagon tribal members to have access to tribal lands. Instead, they would only allow local (assumedly MSU affiliated) white farmers this access. This catered to Defendant Simon's continued ambition of stopping Plaintiff's affirmative action programs.

4) Plaintiff notified the Bureau of Indian Affairs (BIA) administrator, Anne Jennings, that the Pokagon officials were altering the contract. She falsely stated that the Pokagon tribe was allowed to modify contracts. BIA officials no longer answered Plaintiff's communications nor provided the support promised as their part of the agreement.

5) In November, the Pokagon group informed Plaintiff they would no longer employ Plaintiff. They indicated they were being asked to work with other MSU staff. It is speculated that in turn, they would be able to keep the grant money for their own purposes.

6) To date, MSU, the BIA, and the Pokagon have refused to provide information, requested under FOIA, on the continued progress of this grant.

6

**III. Michigan State University conspired to prevent Due Process.**

1) Michigan State University, the Pokagon Tribe and the Bureau of Indian Affairs have all denied Plaintiff's request for information under FOIA. Plaintiff asserts this is further proof of retaliatory conspiracy to prevent non-legal resolution of this situation.

2) When the related Michigan Department of Civil Rights (MDCR) complaint was uncharacteristically immediately opened and then shut down with no investigation, Plaintiff discovered an MDCR lawyer with MSU connections was responsible. Plaintiff filed EEOC complaints against MSU, the MDCR and the Bureau of Indian Affairs.

3) Plaintiff attempted to withdraw another MDCR complaint and move it to the EEOC, explaining that the MDCR lawyer with MSU connections posed a conflict. Instead, MDCR ruled against Plaintiff with no input from Plaintiff. They refused to honor his FOIA requests for related information.

4) The EEOC similarly closed any investigation, uncharacteristically early, with no chance of input from Plaintiff.

IV. **Defendant Simon is preventing Plaintiff's Ph.D. completion in retaliation to Civil Rights complaints and in violation of University policy which Plaintiff and his Ph.D. committee rely on.**

University policy gives sole authority on Ph.D. matters to the university professors administering the Ph.D. for good reason. Professors are not only more knowledgeable about the field and doctoral requirements but they develop working relationships with students to identify their particular concerns, needs and interests. Professors are tenured and tacitly have the responsibility of shielding students from the viciousness of University politics; preventing their students as being victims of administrative, political and/or discriminatory ambitions. Defendant Simon, under color of law, abused her authority by intervening disruptively with Plaintiff's doctorate department, over his objections, upending related University grievance processes to deny Plaintiff his due process, and using her position to prevent internal processes and individual efforts to allow obtainment of Plaintiff's doctorate.

I. **History**

a) Timed with Plaintiff's filing of a Civil Rights complaint (regarding his Ph.D. and Ph.D. funding working with migrant farm workers) early in Plaintiff's academic career, the central administration began a pattern of discriminatory behavior towards Plaintiff. Defendant stripped Plaintiff of his financial aid from that point on and worked to terminate his program at every juncture. *Defendant has driven Plaintiff from a position of sitting on an international research committee while being offered faculty employment to utter ruin.*

8

i)     A Civil Rights complaint was needed to start his doctorate after three years of waiting (University policy states, and normal practice is, this was to be done immediately upon enrollment).

ii)    American Civil Liberties Union intervention thwarted a MSU General Counsel aided attempt to terminate Plaintiff's doctorate shortly after the Civil Rights complaint. This attempt was against the wishes of Plaintiff's Ph.D. committee and based on misquoted university policy and knowingly mis-graded preliminary examinations.

iii)   In response to pressure to institute plaintiff's migrant farm worker program, Defendant Simon, then the MSU Provost, assigned her assistant, Karen Klomperans, working with John Speicher, a MSU professor with a long history of racial complaints from plaintiff and other students, to interact with his Ph.D. This served to antagonize Plaintiff's department, drawing several formal internal (including a failed attempt at a restraining order from Plaintiff) from Plaintiff and his committee. The intention was to discourage his work with migrant farm workers, discredit Plaintiff and prolong and eventually upended his doctorate progress.

iv)    In 1999. Defendant MSU refused requests made by Plaintiff in a related MDCR complaint to neither allow access to his financial aid nor develop a plan to finish his Ph.D. They admitted that Plaintiff's Ph.D. would therefore not be finished.

v)     In 2000, the MSU Board of Trustees forced Plaintiff's program, recruiting migrant farm worker children as MSU students, onto Defendant Simon

9

and the College of Agriculture Dean, Fred Poston. Defendant had her lawyers disrupt the meeting after stating that Plaintiff was not to be involved in the program and had to leave the University as soon as possible. Shortly afterward, Plaintiff was arrested by MSU police and his doctorate administratively terminated with no input from those charged with supervising his. Ph.D.

vi)     Defendant Simon admitted she knew she was facing a civil rights complaint from Plaintiff at the time of his arrest and Ph.D. termination. However, the related F.B.I. investigation was prematurely shut down by a Department of Justice attorney.

vii)    Plaintiff and his supervising professor were denied access to internal due process procedures, a process that can only terminated by a central Administrator. *Being denied due process, Plaintiff and various professors, including his assigned supervising Ph.D. Professor, have continued this Ph.D. progress through the implementation of several research projects. (As recently as 2010, Plaintiff, his Ph.D. professor and State Senator Garcia, asked for, and were rejected, for a chance to have their case heard.)*

10

## II.    Current Events

1.  In Spring, 2008, Plaintiff's attempt to obtain a Ph.D. was upended when several professors were ordered to relinquish their work with Plaintiff by University lawyers. It appeared a State Agency, who administered a fellowship received by Plaintiff, notified Defendant Simon's assistant, Karen Klomperens, of Plaintiff's and the MSU professors' ambitions.

2.  November, 2008, MSU Vice President and Professor Keith Groty, notified that he had been unsolicitedly contacted by Defendant's attorney, Mike Kiley, who reminded him of the Administration's stance against the completion of Plaintiff's Ph.D. Groty had just contacted Karen Klomparens, Defendant Simon's past assistant, as part of an effort to resolve plaintiff's Ph.D. administrative hurdles.

3.  January 2009, Plaintiff's Department Chair, after discussions with Dr. Keith Groty, allowed Plaintiff to re-enroll in the Department as an effort to resolve his Ph.D. Defendant Simon apparently was notified though a State Fellowship program of this effort. It appeared the Department Chair's intention was upended by Defendant.

4.  June,  2009, Eduardo Guizar, a professor from the MSU Spanish department, agreed to supervise Plaintiff on a research project and to accept the funding for Plaintiff's employment and Ph.D. endeavors.  Jim Oehmke, and another Agriculture Economics professor, Steve Miller,  were also involved in this research project.

5.  September, 2009 Drs. Guizar and Miller, citing administrative pressure, relinquished their support.

11

6.  In Fall, 2010, at the request of Plaintiff and his supervising professor, Dr. James Oehmke, Senator Valde Garcia asked MSU officials to meet with Plaintiff and Dr. Oehmke, to instigate Due Process. The University administration rejected their request.

7.  Spring, 2011. Ruben Martinez and Plaintiff worked on a grant to hire Plaintiff to conduct research. As the proposal neared completion, Martinez questioned plaintiff's research intentions and gave the excuse that $200,000 is not enough money to conduct a project.

8.  In April, 2011, Dr. Gordon Henry, Professor and Director of MSU's Native American Institute, agrees to work with and hire Plaintiff to do outreach work and conduct research. A goal of the research was to provide data for a Ph.D. thesis.

9.  August, 2011, Dr. Henry cuts ties with Plaintiff at the direction of Defendant's lawyers.

10. November, 2011. Oehmke and Plaintiff continue the Ph.D. intended research, working with the Pokagon tribe and the Bureau of Indian Affairs (BIA). As described earlier, citing interactions with MSU officials, the Pokagon and the BIA cut their relationships with Plaintiff and Oehmke, interfering with his Ph.D. ambitions.

11. July, 2012. The USDA issues a right to sue letter based solely on University input and despite the lack of any input from Plaintiff.

12. August 2012. Plaintiff requests Ph.D. documents and communications related to the Native American Initiative that he began. The University requires that he pay $4000 for this information.

## COUNT I

## RETALIATION UNDER TITLE VII

1.  Plaintiff hereby incorporates the above as if fully restated herein.

2.  Defendant Michigan State University retaliated against plaintiff for having filed a Civil Rights complaint, in violation of Title VII; 42 U.S.C. §2000e-3(a). Defendant's actions were intentional, with reckless indifference to plaintiff's rights and sensibilities.

3.  As a direct and proximate result of defendant's wrongful acts, plaintiff has sustained loss of earnings, earning capacity, fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, embarrassment, and loss of professional reputation.

WHEREFORE, plaintiff requests that this Court enter judgment in favor of plaintiff and against Defendant MSU for lost wages and benefits, past and future, in whatever amount he is found to be entitled; compensatory damages in whatever amount he is found to be entitled; punitive and exemplary damages commensurate with the wrong and Defendant's ability to pay; an award of interest, costs and reasonable attorneys' fees; an order reinstating plaintiff to the position he would have held if there had been no discrimination and retaliation by defendant; an injunction prohibiting any further acts of retaliation or discrimination; and further equitable relief appropriate under the circumstances.

13

## COUNT II
## ELLIOTT-LARSEN ACT

1. Plaintiff hereby incorporates by reference the above paragraphs as if fully restated herein.

2. Defendant Michigan State University retaliated against plaintiff for having complained, described above, in violation of the Michigan Elliott-Larsen Civil Rights Act.

3. Defendant's actions were intentional, with reckless indifference to plaintiff's rights and sensibilities.

4. As a direct and proximate result of defendant's wrongful acts, plaintiff has sustained loss of earnings, earning capacity, fringe benefits, and has suffered mental anguish, physical and emotional distress, humiliation, embarrassment, and loss of professional reputation.

WHEREFORE, plaintiff requests that this Court enter judgment in favor of plaintiff and against Defendant MSU for lost wages and benefits, past and future, in whatever amount he is found to be entitled; compensatory damages in whatever amount he is found to be entitled; an award of interest, costs and reasonable attorney's fees; an order reinstating plaintiff to the position he would have held if there had been no discrimination and retaliation by defendant; an injunction prohibiting any further acts of retaliation or discrimination; and further equitable relief appropriate under the circumstances.

14

## COUNT III

**42** USC § **1983** - Civil Action for Deprivation of Rights Michigan State University

Plaintiff incorporates by reference the above paragraphs as if fully restated herein.

1.      Under State of Michigan laws, plaintiff enjoys a constitutionally protected property
interest in his doctorate and employment.  Before depriving plaintiff of his
constitutionally protected property interest and continued employment and educational
efforts, Defendant MSU did not conduct a pre-termination hearing or afford plaintiff
either notice of the grounds for his termination or a meaningful opportunity to respond.

2.      Defendant's actions in depriving plaintiff's constitutionally protected property interest in
continued employment and unfettered educational endeavors, especially absent a pre-
termination hearing or other grounds for termination and opportunity to respond abridged
his right to due process of law. violates the 14th Amendment to the U.S. Constitution.

3.      As a direct and proximate result of defendant's actions, plaintiff has suffered and will
continue to suffer substantial damages, including, but not limited to, the loss of wages
and benefits received as having a doctorate and as an employee of Defendant MSU.

WHEREFORE, plaintiff requests that this Court enter judgment in favor of plaintiff and
against Defendant MSU for lost wages and benefits, past and future, in whatever amount he is
found to be entitled; compensatory damages in whatever amount he is found to be entitled;
punitive and exemplary damages commensurate with the wrong and Defendant's ability to pay;
an award of interest, costs and reasonable attorney's fees; an order reinstating plaintiff to the
position he would have held if there had been no discrimination and retaliation by defendant; an
injunction prohibiting any further acts of retaliation or discrimination; and further equitable relief
appropriate under the circumstances..

## COUNT IV
## CONSPIRACY TO DEPRIVE PLAINTIFF OF CONSTITUTIONALLY PROTECTED RIGHT UNDER 42 U.S.C. §1985

1.    Plaintiff hereby incorporates by reference all paragraphs above as if fully set forth herein.

2.    Defendant illegally, maliciously, and wrongfully conspired with other local, state and federal agencies with the intent to deprive the plaintiff of his property continued employment. This included preventing due process of law in violation of                    available to those whose constitutional rights *had been violated* by an actor acting under State authority.

3.    As a result of its wrongful acts, plaintiff has suffered damages.


WHEREFORE, plaintiff requests that this Court enter judgment in favor of plaintiff and against Defendant MSU for; an injunction prohibiting any further acts of retaliation or discrimination; and further equitable relief appropriate under the circumstances.

16

## COUNT V

### Tortious Interference with Contract Rights

1.    Plaintiff hereby incorporates by reference all paragraphs above as if fully set forth
      herein.

2.    AS described, Defendant interfered with numerous parties to breach contracts,
      disrupting the ability of Plaintiff to perform his obligations under the contract,
      thereby preventing the Plaintiff from receiving the performance promised.

      WHEREFORE, plaintiff requests that this Court enter judgment in favor of plaintiff and

against Defendant MSU for lost wages and benefits, past and future, in whatever amount he

is found to be entitled; compensatory damages in whatever amount he is found to be entitled;

punitive and exemplary damages commensurate with the wrong and Defendant's ability to

pay; an award of interest, costs and reasonable attorney's fees; an order reinstating plaintiff

to the position he would have held if there had been no discrimination and retaliation by

defendant; an injunction prohibiting any further interference; and further equitable relief

appropriate under the circumstances.

17

## Count VI

### Retaliatory Harassment by Individuals Lou Anna Simon and her Immediate Administration

1.  Plaintiff hereby incorporates all paragraphs above as if fully set forth herein.

2.  Title VI and the Elliot Larsen Civil Rights Act prohibit allowing a racially hostile environment in institutions and programs receiving federal funds. Adverse actions taken against Plaintiff's employment, education and affirmative action agendas or in retaliation to his Civil Rights complaints create a racially hostile environment.

3.  Some acts described above such as the interference by Defendant in Plaintiff's Ph.D. and employment ambitions both outside and inside MSU were outside the scope of their duties (acting under Color of Law). For example, neither Mr. Kiley nor Ms. Simon has direct obligations regarding Plaintiff's doctorate progress or employment ambitions without due process. They had no business having / allowing agents to interact with Plaintiff's elderly parents in order to monitor his activities. Should professors want to work to ameliorated Plaintiff's educational and employment issues, it would seem Defendant's job would be to enhance such efforts.

WHEREFORE, plaintiff requests that this Court enter judgment in favor of plaintiff and against Defendant MSU for lost wages and benefits, past and future, in whatever amount he is found to be entitled; compensatory damages in whatever amount he is found to be entitled; punitive and exemplary damages commensurate with the wrong and Defendant's ability to pay; an award of interest, costs and reasonable attorney's fees; an order reinstating plaintiff to the position he would have held if there had been no discrimination and retaliation by defendant; an injunction prohibiting any further interference; and further equitable relief.

## Count VII

### Breach of Contract

1. Plaintiff hereby incorporates by reference all paragraphs above as if fully set forth herein.

2. An agreement existed between MSU officials and Plaintiff regarding his employment that Plaintiff allocated resources towards and relied on.

3. The educational policies are explicitly laid out in University policy. Plaintiff and his Ph.D. committee relied on these policies.

4. Yet, Defendant overstepped her bounds, under Color of Law, and disrupted these interactions to the demise of Plaintiff.

WHEREFORE, plaintiff requests that this Court enter judgment in favor of plaintiff and against Defendant MSU for lost wages and benefits, past and future, in whatever amount he is found to be entitled; compensatory damages in whatever amount he is found to be entitled; punitive and exemplary damages commensurate with the wrong and Defendant's ability to pay; an award of interest, costs and reasonable attorney's fees; an order reinstating plaintiff to the position he would have held if there had been no discrimination and retaliation by defendant; an injunction prohibiting any further interference; and further equitable relief appropriate under the circumstances.

19

## Count VIII

### FOIA

1. Plaintiff hereby incorporates by reference all paragraphs above as if fully set forth herein.

2. On August 15, 2012, Plaintiff requested related educational and employment documents under the Freedom of Information Act (FOIA).

3. MSU refused to provide the documents by charging an outlandish amount of $4000.

4. Plaintiff avers this is an intentional violation of the FOIA, given the coordinated FOIA denials of other institutions, and asks that court award sanctions and legal costs and order production of the documents pursuant to FOIA law.

Robt Gardem
Sept. 21, 2012

20