UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT GARDNER, <br>     Plaintiff, <br> <br> -v- <br> <br> MICHIGAN STATE UNIVERSITY BOARD <br>     OF TRUSTEES and <br> LOU ANNA SIMON, <br>     Defendants. | No. 1:12-cv-1018 <br> <br> HONORABLE PAUL L. MALONEY |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Before the court are Defendant Michigan State University's motion for summary judgment (ECF No. 129) and Defendant Lou Anna Simon's motion to dismiss or for summary judgment (ECF No. 76). In this matter, Plaintiff Robert Gardner alleges eight claims of action stemming from his relationship with Michigan State University and its president, Lou Anna Simon, over two decades. Specifically, he alleges that the university retaliated against him for filing a civil rights complaint in August 2011, in violation of Title VII of the Civil Rights Act and Michigan's Elliott-Larsen Civil Rights Act. He also claims violations of his due process rights under § 1983, conspiracy under § 1985, tortious interference with contractual rights, retaliatory harassment, breach of contract, and violations of the Freedom of Information Act.

Having reviewed the briefing and relevant legal authority, the Court finds the matter can be resolved without oral argument. *See* W.D. Mich. L. R. Civ. P. 7.2(d). For the following reasons, the Court will **GRANT IN PART AND DENY IN PART** the defendants' motions.

**I.    BACKGROUND**

Plaintiff Robert Gardner and Defendants Michigan State University and Ms. Simon have a

history of conflict dating back to 1985. The facts relevant to this claim began in 2009[1] and are taken in the light most favorable to the non-moving party, Mr. Gardner. Throughout 2009 and 2011, Plaintiff attempted to start research projects associated with MSU that were not successful for various reasons. (ECF No. 1 at pg. 11-12.) On April 26, 2011, Plaintiff claims that he obtained a "contingent employment arrangement" at MSU. (ECF No. 1 at pg. 4.) Under this arrangement, he would work voluntarily for Dr. Gordon Henry establishing an outreach program for the Native American Institute, and when funding became available, Plaintiff would be hired in a paid position. (*Id.*) During summer 2011, Plaintiff recounts that the Bureau of Indian Affairs promised Plaintiff funding if he could get the support of a Michigan Native American Tribe. (*Id.* at 5.) Plaintiff apparently arranged an agreement with the Pokagon Tribe that would have secured the BIA funding and allowed Plaintiff to complete his Ph.D. and be employed at MSU. (*Id.*) No such agreement has been produced. (ECF No. 130 at pg. 4-6.)

In August 2011, Plaintiff filed a complaint with the Michigan Department of Civil Rights and filed a federal civil rights lawsuit against Lou Anna Simon and the MSU Board of Trustees. (ECF No. 1 at pg. 4.) Plaintiff alleges that shortly thereafter, Defendants undertook a series of actions to retaliate against him because of the complaint and lawsuit. First, Plaintiff alleges that the university's lawyers directed Dr. Henry to "cut ties" with Plaintiff. (*Id.* at pg. 12.) Next, Plaintiff alleges that the contract with the Pokagon Tribe fell apart after Michael Kiley, an MSU attorney,

---

[1]Although Mr. Gardner recounts nearly every interaction he has had with Defendants MSU and Simon, only the acts that occurred within the three year statute of limitations and are not barred by res judicata will be considered. *See Marlowe v. Fisher Body*, 489 F.2d 1057, 1063 (6th Cir. 1973); *Garg v. Macomb Cnty. Comty. Mental Health Servs.*, 472 Mich. 263; 696 N.W.2d 646 (2005); *Phifer v. City of Grand Rapids, Mich.*, 657 F. Supp. 2d 867, 872-73 (W.D. Mich. 2009). Defendants raised the defense of res judicata only as to Plaintiff's claims concerning his denial of graduate admission in 2009. Accordingly, the Court considers the remainder of the facts within the three years preceding Plaintiff's complaint.

made false representations in the 2011 federal lawsuit that Plaintiff had tried to pose as an MSU professor in the past. (*Id.* at pg. 5.) The Pokagon Tribe informed Plaintiff in November 2011 that it was not going to continue with the program and it would no longer employ Plaintiff. (*Id.* at pg. 6.) Finally, Plaintiff alleges that MSU, the Pokagon Tribe, and the BIA have refused to provide information to him under the Freedom of Information Act, and that lawyers with unspecified connections to MSU interfered with his claims to the Michigan Department of Civil Rights and the Equal Employment Opportunity Commission, preventing the fair adjudication of those claims. He alleges that in August 2012 he requested documents and communications related to the Native American Initiative that he began through a FOIA request, and was asked to pay $4,000 for the information.

Defendants claim that Mr. Gardner was only one of eleven candidates for a publically-posted Outreach Specialist position posted in the summer of 2011. (ECF No. 130 at pgs. 4-5.) The position was filled by a search committee, and interviewees were granted by a subgroup of the search committee: Kyle Powys Whyte, Stephanie Chau, and Mary Calcatera. Mr. Gardner was not selected for an interview because the committee believed he lacked experience working with native populations and "cultural competence" with respect to tribal communities. (*Id;* ECF No. 134-3 at pg. 7.) Dr. Henry, who served on the panel responsible for choosing the Outreach Specialist, said in an affidavit that he never heard anyone express concern about Mr. Gardner's past disputes with MSU administrators or regarding his ethnicity or race. (*Id.* at 4-5.) However, criminal background checks are done on all candidates for employment, which would have revealed Mr. Gardner's prior conviction for criminal trespass at MSU. (ECF No. 133-5 at pg. 13; ECF No. 130 at pg. 5.) The committee's report outlines its reasons for not choosing to hire Mr. Gardner, and none of the reasons includes his race, prior discrimination complaints, or prior disputes with the university. (ECF No.

3

134-3 at pg. 7.)

Plaintiff filed the instant lawsuit against MSU and its president, Ms. Simon, on September 21, 2012. Defendant Simon filed a motion to dismiss or grant summary judgment on July 11, 2013. (ECF No. 76.) Defendant Michigan State University filed a motion for summary judgment on October 14, 2013. (ECF No. 129.) Both motions are addressed below.

## II. LEGAL FRAMEWORK

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the plaintiff's complaint. Though a plaintiff need only plead "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), the complaint must include "more than labels[,] conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must plead "sufficient factual matter" that, if accepted as true, would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). In reviewing such a motion, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). The court need not accept plaintiff's legal conclusions, however. *Ctr. for Bio-Ethical Reform*, 648 F.3d at 369. Because Mr. Gardner is a pro se litigant, his pleadings should be "liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Summary judgment is appropriate only if the pleadings, depositions, answers to

4

interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Once the moving party has carried its burden, the nonmoving party must set forth specific facts, supported by evidence in the record, showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252. The function of the district court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Resolution Trust Corp. v. Myers*, 9 F.3d 1548 (6th Cir. 1993) *(citing Anderson,* 477 U.S. at 249).

### III. MICHIGAN STATE UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 129)

#### A. RETALIATION CLAIMS: TITLE VII AND ELLIOTT-LARSEN ACT

Counts I and II of Plaintiff's complaint claim federal and state retaliation in violation of Title VII of the Civil Rights Act of 1964 and Michigan's Elliott-Larsen Civil Rights Act. Michigan's Elliott-Larsen Act is construed in the same manner as Title VII. *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1311-12 (6th Cir. 1989). Plaintiff claims Defendants retaliated against him for filing a complaint with the Michigan Department of Civil Rights in August 2011.

Accordingly, only the events after August 2011 are relevant to the retaliation claim.

Title VII prohibits an employer from discriminating against "any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff can prove this retaliation with direct evidence or with circumstantial evidence through the *McDonnell-Douglas* framework. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013); *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792 (1973). First, the plaintiff must prove a prima facie claim by showing: (1) he engaged in protected activity, (2) the exercise of his civil rights was known to defendant, (3) he suffered an adverse employment action, and (4) there was a causal connection between the protected activity and the adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met. *See EEOC v. Avery Dennison Corp*., 104 F.3d 858, 861 (6th Cir. 1997). If the plaintiff establishes a prima facie claim, the burden shifts to the employer to demonstrate a legitimate, nondiscriminatory reason for the adverse employment action. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544-45 (6th Cir. 2008). If such a reason is given, the burden shifts back to the plaintiff to prove that the proffered reason is pretext, because it had no basis in fact, was insufficient to justify the employment action, or was not the real reason for the defendant's decision. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

Plaintiff meets two elements of his prima facie case. Plaintiff engaged in protected activity when he filed a complaint with the Michigan Department of Civil Rights and filed a federal lawsuit alleging discrimination. *See* 42 U.S.C. § 2000e-3. Plaintiff also suffered an adverse employment action when he was not hired for the Outreach Specialist position. *Id*. This is the only adverse

6

employment action that can be found in Plaintiff's pleadings. Defendant disputes whether Plaintiff has established the required causal connection and knowledge of his civil rights cases on the part of those who hired him. This Court is not a "super-personnel department" and does not determine whether the employer made a good hiring decision. *Heerdink v. Amoco Oil Co.*, 919 F.2d 1256, 1260 (7th Cir. 1990). As one court succinctly stated, "[a]n employer may refuse to hire an employee for good reasons, bad reasons, reasons based on erroneous facts, or for no reason at all, as long as its actions are not based on discriminatory purposes." *Lewis-Webb v. Qualico Steel Co., Inc.*, 929 F. Supp. 385, 391 (M.D. Ala. 1996). Accordingly, a causal connection between Plaintiff's civil rights complaints and the decision not to hire him is imperative.

To establish a causal connection between Mr. Gardner's complaint and MSU's failure to hire him, Mr. Gardner must provide evidence "sufficient to raise the interference that his protected activity was the likely reason for the adverse action." *Avery*, 104 F.3d at 861. This can be shown by temporal proximity or different treatment of similarly situated employees. *Moon v. Transp. Drivers, Inc.*, 836 F.2d 226, 230 (6th Cir. 1987). Mr. Gardner does not establish that he was treated differently than other applicants for the Outreach Specialist position who were equally or less qualified than he was. Although Plaintiff's August 2011 complaint and the October 2011 rejection of his application were relatively close in time, nothing in the record suggests that the decision-makers knew about his prior complaints or that MSU administrators who were aware of the complaints influenced the committee's decision. *See Asebedo v. Kansas State University*, No. 12-1373, 2013 WL 3756529 at *5 (D. Kan. July 16, 2013) (finding no causal connection because HR manager in charge of screening did not know of plaintiff's EEOC charge); *c.f. Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 381 (6th Cir. 2002) (finding causal connection where key decision makers clearly knew of plaintiff's prior discrimination complaints). Thus, Plaintiff has not

established a prima facie case of retaliation.

However, even assuming Mr. Gardner can establish a prima facie case, MSU articulated a legitimate, non-discriminatory reason for its action that Mr. Gardner has not shown was pretext for retaliation. The search committee's candid thoughts on Mr. Gardner's application are reflected in its report. (ECF No. 134-3 at pg. 3-8). The report recounts that Mr. Gardner "has no demonstrated ability to work with Tribal Communities . . . a necessary ability for this position;" his current project was "in such beginning stages" that it was unhelpful to demonstrate experience; he "has little experience working with tribes and tribal communities;" and he "may have overstated his role in the development of an outreach program with NAI." (*Id.* at 7.) Further, the committee had concerns about Mr. Gardner using a "big brother" style approach to tribes and there were "a few other red flags" in the application. (*Id.* ) Other applicants for the position were also denied an opportunity to interview with the committee for similar reasons, mainly that they lacked experience and did not demonstrate their ability to work with tribal communities. (*Id.* at 6-8.) This report satisfies MSU's burden to articulate legitimate, non-discriminatory reasons for not hiring Mr. Gardner for this position. Thus, the burden shifts back to Mr. Gardner to demonstrate that these reasons were pretext for retaliation.

Mr. Gardner has not submitted any evidence suggesting that the reasons he was not hired were pretext to retaliate against him. Plaintiff merely recounts the facts stated in his complaint and vaguely alleges that "someone the committee respected" must have given the committee outside information about his work with the Pokagon Tribe. This allegation is too vague to state a claim and does not suggest racial discrimination or retaliation. Plaintiff has not established that the proffered reasons MSU declined to hire him were pretext for retaliation, so no cognizable Title VII or Elliott Larsen claim exists. Summary judgment is **GRANTED** on Counts I and II.

**B.     Section 1983 and 1985 Claims: Conspiracy and Due Process**

In Count III, Plaintiff alleges that he has a constitutionally protected property interest in continued employment with MSU and to earn a doctorate at MSU. He claims that MSU violated his due process rights when it terminated these property interests without a pre-termination hearing, notice, or an opportunity to respond. In Count IV, Plaintiff alleges that MSU conspired with other local, state, and federal agencies to deprive plaintiff of his claimed property rights without due process of law.

Defendants argue that claims under § 1983 and § 1985 cannot be brought against an entity that is not a "person." MSU correctly notes that it is not a "person" under these statutes. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Similarly, "governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," and state officials sued in their official capacity, are not "persons" under section 1983. *Id.* at 70–71 The same framework applies to claims under § 1985. *See e.g.*, *Bennun v. Bd. of Governors of Rutgers*, 413 F. Supp. 1274, 1280 (D.N.J. 1976).

Michigan State University is an arm of the state of Michigan, and it is therefore not considered a "person" for purposes of § 1983 or § 1985. *See, e.g.*, *Dillon-Barber v. Regents of Univ. of Mich.*, 51 F. App'x 946, 952 (6th Cir. 2002) (holding that "the University is not a 'person' under § 1983"); *Hill v. Bd. of Trs. of Mich. State Univ.*, 182 F. Supp. 2d 621, 625 (W.D. Mich. 2001) ("Courts within this district have held that MSU is an "arm of the state" entitled to Eleventh Amendment immunity. . . . In addition, as a state entity, MSU is not a 'person' subject to suit for damages under § 1983.") (citing *Williams v. Mich. State Univ.*, No. 1:93-cv-72, 1994 WL 617272, at *4 (W.D. Mich. Jan.3, 1994); *Weisbord v. Mich. State Univ.*, 495 F. Supp. 1347, 1355 (W.D.

Mich. 1980)).

Accordingly, Plaintiff cannot maintain claims under 42 U.S.C. § 1983 or § 1985 against MSU. Summary judgment is **GRANTED** on Count III and Count IV.

    C.    **Tortious Interference with Contract Rights**

Next, Plaintiff alleges in Count V that MSU "interfered with numerous parties to breach contracts" to which Plaintiff was a party. Defendant argues that MSU is entitled to government immunity for this claim under the Government Tort Liability Act and that Mr. Gardner had no contract with the university with which it could have interfered.

Under Michigan law, governmental bodies are immune from tort liability for actions taken in the exercise or discharge of a governmental function unless the claim falls within certain narrowly-defined exceptions. M.C.L. § 691.1407. Governmental immunity is a characteristic of the government, and thus it is the Plaintiff's duty to plead his or her claim in avoidance of immunity. *Mack v. City of Detroit*, 467 Mich. 186, 198-203 (2002) (holding that the plaintiff must plead and prove facts to avoid immunity; it is not an affirmative defense for the government to prove). Mr. Gardner has not done so.

Even if Mr. Gardner had addressed governmental immunity and successfully avoided it, his claim would not succeed. The elements of a tortious interference claim are: "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83, 90; 706 N.W.2d 843 (Mich. Ct. App. 2005). Here, no written agreement has been produced, but Plaintiff asserts that he had an oral contract with Dr. Henry. Under that purported contract, Plaintiff would have been automatically hired when the department acquired the funding to pay him. However, the record contradicts conclusively the existence of that asserted contract. (*See* ECF No.

134-3 at pg. 1, ¶ 3 (affidavit of Gordon Henry, stating "[N]either I nor the NAI entered into any contract or other agreement with Mr. Gardner.")) The record does not establish any other contract with which Defendants could possibly have interfered. Thus, Plaintiff cannot establish the first element of his claim, and summary judgment of this claim is **GRANTED.**

### D. Breach of Contract

In Count VII of his complaint, Plaintiff alleges than "an agreement existed between MSU officials and Plaintiff regarding his employment" that Defendant breached. For the same reasons discussed in the preceding section, this claim cannot survive summary judgment because there is no evidence a contract existed between Plaintiff and MSU officials. Summary judgment on Claim VII is **GRANTED.**

### E. Freedom of Information Act

Finally, Plaintiff alleges that MSU violated the Freedom of Information Act (FOIA) by charging an exceptional fee for documents requested as authorized by the statute. He alleges that MSU charged $4,000 for educational and employment documents Plaintiff requested. Under Michigan's FOIA statute, the government must promptly respond to requests for information from the public, subject to certain narrow exceptions. M.C.L. 15.235; 15.243 (2013). Public bodies may charge fees for providing public records, but fees are limited to actual mailing costs and the "actual incremental cost of duplication or publication including labor, the cost of search, examination, review, and the deletion and separation of exempt from nonexempt information." M.C.L. 15.234 (2013). Labor costs are limited to the hourly wage of the lowest paid employee who is capable of retrieving the information, and public bodies are instructed to use the most economical means available to make copies of public records. *Id.*

Defendant does not contend that Plaintiff's FOIA claim is subject to dismissal or summary

judgment. Rather, MSU urges the court to refrain from exercising supplemental jurisdiction over this claim and allow state courts to address it. Under 28 U.S.C. § 1367(c), this Court "has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." This discretion is guided by considerations of judicial economy, avoiding multiplicity of litigation, and avoiding unnecessarily deciding state law issues. *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). The Sixth Circuit has instructed that "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). *See also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claim should not ordinarily reach the plaintiff's state-law claims.").

Because all of Plaintiff's other claims have been dismissed, the balance of considerations weighs against this Court exercising its supplemental jurisdiction here. The interests of justice and comity are best served by deferring to Michigan's courts, which are best equipped to interpret and apply their own state's law. *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 585 (6th Cir. 2005). Accordingly, Plaintiff's FOIA claim is **DISMISSED WITHOUT PREJUDICE.**

### IV. DEFENDANT SIMON'S MOTION TO DISMISS/GRANT SUMMARY JUDGMENT (ECF NO. 76)

In this motion, Defendant Lou Anna Simon requests that the claims against her be dismissed either because Plaintiff has failed to state a claim upon which relief can be granted, under Rule 12(b)(6), or in the alternative, because there is no genuine issue of material fact and she is entitled to judgment as a matter of law, under Rule 56. Ms. Simon argues that there are sparse references to her in the complaint that establish no cognizable claim. She argues that she has not had contact with

Plaintiff in over a decade and there is no evidence linking her to the decisions that Plaintiff complains about in his pleadings.

Defendant, citing *Georgakis v. Illinois State University*, implies that Plaintiff's only reason for bringing this suit is to harass Ms. Simon and MSU. 722 F.3d 1075, 1078 (7th Cir. 2013) (granting motion to dismiss for frivolous suit filed by pro se plaintiff, the seventh suit after six others had been dismissed, because the suit appeared to be intended to harass the defendants). Plaintiff responds that Ms. Simon is the only administrator at MSU who had the authority to interfere with his employment and educational opportunities in a variety of university departments and outside institutions. He alleges that Ms. Simon is the only person who had the authority to discourage professors from working with him, and that she directed her lawyers to harass Plaintiff and submit false affidavits. Finally, he argues that Ms. Simon felt her political position was threatened by Plaintiff's civil rights complaint against her, giving Ms. Simon a motive to retaliate against him. He admits that the only direct contact he has had with Ms. Simon is his filing of multiple civil rights complaints and an alleged dispute over a migrant farm worker affirmative action program many years ago. Ultimately, Plaintiff alleges that Ms. Simon used her position as president of MSU to act as a "puppet master," pulling strings to force her subordinates to harass and attack Plaintiff because he has complained about discrimination at MSU in the past. Plaintiff also argues that because of his pro se status, his complaint should not be dismissed until he can prove his claims with discovery. However, Plaintiff had more than four and a half months of time to complete discovery before he filed his response to this motion. (*See* Case Management Order, ECF No. 15.) At the time of this order, discovery is completed. Neither party has requested to submit supplemental briefing based on anything discovered after the filing of this motion.

The allegations in the complaint that implicate Ms. Simon are that she (1) has an ambition

of stopping Plaintiff's migrant farm worker program because she was forced to implement it by the university's Board of Trustees; (2) interfered with Plaintiff's ability to complete his doctorate by pulling his financial aid, assigning a professor with a history of racial complaints to Plaintiff, and having her lawyers disrupt a meeting and forcing Plaintiff to leave the university; (3) instructed professors to stop working with or helping Plaintiff in his research and punished professors who helped him; (4) somehow had a hand in Plaintiff being dismissed as a professor at Lansing Community College after he filed a civil rights lawsuit against MSU in 2003. Plaintiff's claims, even construed generously as is appropriate for pro se plaintiffs, together with the pleadings, depositions, answers to interrogatories, admissions, and affidavits taken in the light most favorable to the Plaintiff, cannot survive summary judgment. Fed. R. Civ. P. 56.

Defendant Simon has met her burden under Rule 56 to demonstrate that there are no genuine issues of material fact against her in this case. This burden can be met by demonstrating a lack of evidence to support the nonmoving party's case. *Bennett*, 410 F.3d at 817. Ms. Simon submitted an affidavit created on March 1, 2012 for a prior suit in which she stated that:

> 3. During the [past] decade, I have had no contact with Mr. Gardner; nor do I recall his name or anything about him being brought to my attention before today.
>
> 4. During the past decade, I have not directed or suggested that anyone take any action, or not take any action, in connection with Mr. Gardner; to my knowledge, I have had no say in any employment or grant program in which Mr. Gardner was involved or had an interest.
>
> 5. I hold no ill will or animosity of any form against Mr. Gardner and I regret that he apparently thinks otherwise; I can state with confidence that such thoughts are factually baseless.

(ECF No. 79-1 at ¶¶ 3-5.) Ms. Simon also submitted a supplemental affidavit created on July 11, 2013, in which she stated:

> During the interim period since I signed the earlier affidavit, I have had no contact with Robert Gardner and I have not been involved in any matter, decision or activity

which I understood involved or affected him in any way whatsoever.

(ECF No. 79-2 at ¶ 2.) Mr. Gardner has not submitted any deposition testimony, answers to interrogatories, admission, affidavits, or any other evidence that contradicts these statements. *See, e.g., Gannon Intern, Ltd. v. Blocker*, 684 F.3d 785 (8th Cir. 2012) (granting summary judgment based on admittedly "self-serving" statements that were unrebutted by the nonmoving party; non-moving party's speculation and conjecture were insufficient to defeat summary judgment).

Since Ms. Simon has met her burden, Mr. Gardner must set forth specific facts, *supported by evidence in the record*, showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e) (emphasis added); *Matsushita*, 475 U.S. at 586. The purpose is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Id.* at 587. There is no genuine issue for trial "where the record taken as a whole, could not lead the trier of fact to find for the non-moving party." *Id.* (citing *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

The only portions of the record tying Ms. Simon to this lawsuit are Mr. Gardner's unsupported and vague speculations as to Ms. Simon's actions in the complaint. Plaintiff has failed to set forth specific facts supported by evidence in the record demonstrating that Ms. Simon has done anything to impact his employment or education at MSU. After more than four and a half months of discovery, Plaintiff has not uncovered any emails or written communications in which Ms. Simon directed professors to stop working with Plaintiff or directed her lawyers to undertake harassing actions against Plaintiff. No affidavit or deposition has been presented in which any professor, government agent, or Pokagon Tribe member stated that he or she had been contacted by Ms. Simon. Mr. Gardner has not presented any evidence showing that there is a need for trial; indeed, the trier of fact would not be able to find in Plaintiff's favor. *See Matsushita*, 475 U.S. at 586.

Finally, the court notes that this case is distressingly similar to *Georgakis,* 722 F.3d 1075. Mr. Gardner has litigated identical and similar claims in multiple state and federal lawsuits which have all been dismissed on summary proceedings in favor of the defendants. (*See* ECF No. 77-2, 77-4, 78-1, 78-5.) This raises a real question of whether Mr. Gardner is using this litigation to harass Ms. Simon and MSU. A suit that is frivolous or intended to harass "can justifiably be dismissed with prejudice to avoid burdening the court system with a future suit that should not be brought—anywhere." *Georgakis*, 722 F.3d at 1078. Considering this serial litigation, its use of the Court's resources, and Plaintiff's unfounded allegations, all claims against Ms. Simon are **DISMISSED WITH PREJUDICE**.

V. CONCLUSION

For the reasons discussed above, the Court will dismiss each of Mr. Gardner's claims against each defendant in this matter.

**ORDER**

For the reasons provided in the accompanying opinion, Defendant Lou Anna Simon's motion for summary judgment (ECF No. 76) is **GRANTED**. All counts are **DISMISSED WITH PREJUDICE.**

Further, Defendant Michigan State University's motion for summary judgment (ECF No. 129) is **GRANTED IN PART AND DENIED IN PART**.

1. Counts I through VII are **DISMISSED WITH PREJUDICE.**

2. Count VIII is **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. 1367(c)(3).

**IT IS SO ORDERED**.

Date:   February 11, 2014            /s/ Paul L. Maloney
                     Paul L. Maloney
                     Chief United States District Judge